**AXELROD LLP**
**1465 Fifth Avenue, No. 7D**
**New York, NY 10035**
**(646) 986-4444**

Robert J. Axelrod
raxelrod39@gmail.com                                                December 29, 2022

Hon. Joanna Seybert
United States District Judge
Eastern District of New York
United States District Court
100 Federal Plaza
Central Islip, NY 11722

        Re:    AA Medical, P.C. v. Centene Corporation, d/b/a Fidelis Care
                 Case No. 2:21-cv-5363-JS-ST

Dear Judge Seybert:

This office represents AA Medical, P.C. ("Plaintiff") in this action. We respectfully submit this response to the letter of Defendant Centene Corporation, d/b/a Fidelis Care renewing its request for a pre-motion conference.

There are three patients in the Consolidated Amended Complaint ("CAC"). For patient DA, Plaintiff's surgeon performed emergency surgery, for which Plaintiff billed $106,606.32 and Defendant reimbursed $0. CAC ¶¶ 10-12. For Patient DR, Patient's surgeon performed a total hip replacement, for which Plaintiff billed $99,269.40 and Defendant paid $690.37, leaving an unreimbursed amount of $98,579.03. CAC ¶¶ 21-23. For patient RS, Plaintiff's surgeon evaluated the patient in the emergency room and performed emergency surgery and follow up surgery, for which Plaintiff billed $127,760.02 and Defendant paid $812.99, leaving an unreimbursed amount of $127,747.03. CAC ¶¶ 25-26.

In response to Defendant's initial request for pre-motion conference, Plaintiff requested discovery on the correct defendant after Defendant contended that New York Catholic State Health Plan ("NYCSHP") "operated" Fidelis Care before June 1, 2018 and that New York Quality Healthcare Corporation ("NYQHC") "operated" Fidelis care since June 1, 2018. The Court granted Plaintiff's discovery request. The Magistrate Judge denied Plaintiff's motion to compel, and Defendant produced the Asset Purchase Agreement between Centene and HYCSHP (the "Agreement"), a Declaration and the names of NYQHC's Board of Directors. Pursuant to Defendant's request, Plaintiff agreed to not name NYQHC's Board of Directors in a non-sealed filing.

1

Defendant renews its contention concerning NYCSHP and NYQHC. With respect to NYCSHP, the Agreement shows, or at least demonstrates an ambiguity, concerning Centene's obligation to indemnify NYCSHP for two of the claims in this case. Section 8.03 of the Agreement obligates Centene to indemnify NYCSHP for "assumed liabilities." "Assumed liabilities" is defined in section 2.03, which states that "Buyer shall assume liabilities (whether arising before or after the closing), other than excluded liabilities . . . (b) all liabilities under the assigned contracts . . . (e) all liabilities directly related to buyer's ownership or operation of business and purchased assets." "Excluded liabilities" under section 2.04 is defined as any liabilities arising under seller employer plans." It is, at minimum, ambiguous whether "any liabilities arising under seller employer plans" represent the claim for unjust enrichment in this case, such that it is excluded from the "assumed liabilities" for which Centene is obligated to indemnify NYCSHP. For this reason, Plaintiff should be permitted to maintain the action against Centene as the real party in interest. Fed. R. Civ. P. 17(a); *Southwest Risk, LLP v. Ironshore Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS 16444, *3 (S.D. Tex. Feb. 11, 2015); *see Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003); *NCUA Bd. v. Deutche Bank Nat'l Trust, Co.*, 410 F. Supp. 3d 662, 673-74 (S.D.N.Y. 2019).

Defendant also renews its contention that NYQHC is the proper defendant for one of the claims. However, production of the members of NYQHC's Board of Directors reveals that each of the five members are or were employees of Centene. One is a medical director at Centene. Another is CEO of another, non-New York, Centene company. Another was a senior manager at Centene. Another was a senior vice president of Centene. One identifies herself as a "board director of Centene/Fidelis Care." None appear to have any connection to NYQHC.

The Fidelis website (www.fidelis.org) reveals the deep connection between Fidelis and Centene. The documents within the website state: "Fidelis and Fidelis Care are trademarks of Centene Corp." A press release entitled "Fidelis Care to Join with Centene," states: "Fidelis Care has taken a major step to ensure that the Company's mission will be strengthened for the future by reaching an agreement under which we will become Centene's health plan in New York State." It continues: "By joining with Centene, Fidelis Care will have the support, investment and innovation that are necessary to meet the healthcare needs of New York State residents today and in the future." It concludes: "once the agreement is finalized, Centene will maintain the Fidelis Care name, mission and management teams, and will welcome Fidelis Care's more than 4,000 dedicated team members to the Centene family." Similarly, a document entitled "Welcome Providers!" states: "We are pleased to announce that all necessary regulatory approvals have been received for Fidelis Care to become part of the Centene family of health plans effective July 1, 2018." A document entitled "Join our Team" characterizes Fidelis Care as "a Centene Company," and "a wholly owned subsidiary of Centene Corporation." Even Fidelis Care's clinical and payment policies refers to Centene's clinical policy committee, and notes that they are "the property of Centene Corporation."

NYQHC simply appears to be the entity through which Centene provides insurance in New York as Fidelis Care, which is a brand name of Centene. Centene operates Fidelis Care directly. Centene owns Fidelis Care; NYQHC does not. For these reasons, Centene is the proper defendant.

Defendant contends that the sole forum is the dispute resolution process set out under the Surprise Billing Act, citing *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, 167 A.D.3d 461 (1st Dep't 2018). But the court in *AA Medical, P.C. v. Healthfirst, slip op.* (N.Y. Sup. Ct. Suffolk Co. Dec, 13, 2022), which Defendant appends to its renewed request for a pre-motion conference, held that *Buffalo* "does not, as defendant suggests, preclude a claim for unjust enrichment but merely states that there is no private right of action to enforce the provisions of the New York Emergency Services and Surprise Bills Act. Accordingly, this court finds that plaintiff has adequately pled a claim for unjust enrichment."

Defendant also contends that Plaintiff's claim for unjust enrichment fail because Plaintiff did not establish that it conferred a direct benefit on Defendant. Again, the court in *Healthfirst* was "not persuaded by this argument as 'an insurance company is unjustly enriched if it fails to pay the hospital in full by the costs incurred in rendering the necessary treatment to the insurer's enrollees,' *Emergency Physician Services of New York v. United HealthGroup*, 2021 WL 447166." Here, Defendant received a benefit because Plaintiff provided treatment to Defendant's plan members. *See El Paso Healthcare Sys. Ltd. v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) ("While it is true that the immediate beneficiaries of the medical services were the patients, and not Molina, that company did receive the benefit of having its obligations to its plan members . . . discharged.").

Defendant cites to inapposite *quantum meruit* cases, not unjust enrichment cases, which have different elements including an "expectation of compensation" requirement which translates to "at the behest of" another. An unjust enrichment claim does not have this element. *Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 150 F. Supp. 2d 556 (S.D.N.Y. 2001); *Pekler v. Health Ins. Plan of Greater NY*, 888 N.Y.S. 2d 196 (2d Dep't 2009); *Kirell v. Vytra Health Plans of Long Island, Inc.*, 815 N.Y.S. 2d 185 (2d Dep't 2006). In *Josephson v. United Healthcare Corp.*, 2012 U.S. Dist. LEXIS 144830 (E.D.N.Y. July 24, 2012), the plaintiff alleged that United was unjustly enriched in the form of higher premiums.

Defendant finally contends that the claim should be dismissed because Plaintiff does not "demonstrate" the amount of the reasonable rate or the usual and customary rate, or that it is actually at least $98,000. First, Plaintiff is not required to "demonstrate" or provide evidence at this stage of the proceedings under Fed. R. Civ. P. 8. This information will be provided as part of Plaintiff's damages analysis. Second, Defendant misapprehends the allegations of the CAC. The CAC does not allege that the unreimbursed amount is the reasonable rate; it alleges that Plaintiff is entitled to the reasonable rate in the alternative.

For the above reasons, the CAC should not be dismissed.

/s/ Robert J. Axelrod

cc:     All Parties on ECF