UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AA MEDICAL, P.C.,                                    Case No.: 2:21-cv-5363

                                    Plaintiff,

      vs.

CENTENE CORPORATION, d/b/a FIDELIS CARE,

                                    Defendant.
-------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS COMPLAINT

Robert J. Axelrod
AXELROD LLP
1465 Fifth Avenue, No. 7D
New York, NY 10035
(646) 986-4444

*Attorney for AA Medical, P.C.*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 5

STATEMENT OF FACTS ..................................................................................................... 7

ARGUMENT .......................................................................................................................... 8

    A.  Standard of Review ................................................................................................ 8

    B.  The Court Should Deny Defendant's Partial Motion for Summary Judgment ............ 9

    C.  The Court Should Deny Defendant's Motion to Dismiss ........................................ 11

CONCLUSION ..................................................................................................................... 14

## **TABLE OF AUTHORITIES**

*AA Medical, P.C. v. Healthfirst, slip op.* (N.Y. Sup. Ct., Suffolk Co., Dec. 13, 2022) ............. 6, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 8

*Brod v. Omya, Inc.*, 653 F.3d 156 (2d Cir. 2011) ..........................................................................8

*Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, 167 A.D.3d 461 (1st Dep't 2018) ....... 6,11

*Candreva v. Ultra-Kote Technology, Ltd.*, 44 A.D.3d 601 (2d Dep't 2007) ................................ 12

*El Paso Healthcare Sys. Ltd. v. Molina Healthcare of N.M., Inc.*,
    683 F. Supp. 2d 454 (W.D. Tex. 2010) ........................................................................... 7,11

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*,
    2021 U.S. Dist. LEXIS 185009 (S.D.N.Y. Sept. 28, 2021) ............................................... 11

*Fisher v. Mermaid Manor Home for Adults, LLC*,
    192 F. Supp. 3d 323 (E.D.N.Y. 2016) ................................................................................ 8

*Halebian v. Berv.*, 644 F.3d 122 (2d Cir. 2011) ........................................................................... 9

*Josephson v. Oxford Health Ins., Inc.*,
    2012 N.Y. Misc. LEXIS 3589 (Sup. Ct. Nasau Co. 2012) ............................................... 13

*Kirell v. Vytra Health Plans of Long Island, Inc.*, 815 N.Y.S. 2d 185 (2d Dep't 2006) ............. 13

*Mandarin Trading Ltd. v. Widenstein*, 16 N.Y.3d 173 (2011) ..................................................... 13

*NCUA Bd. V. Deutche Bank Nat'l Trust, Co.*, 410 F. Supp. 3d 662 (S.D.N.Y. 2019) ............... 11

*Neilsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) ............................................................................... 8

*Oscar Gruss & Son v.* Hollander, 337 F.3d 186(2d Cir. 2003) .................................................... 11

*Pekler v. Health Ins. Plan of Greater NY*, 888 N.Y.S. 2d 196 (2d Dep't 2009) ......................... 13

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) .................................................. 9

*Southwest Risk LLP v. Ironshore Specialty Ins. Co.*,
    2015 U.S. Dist. LEXIS 16444 (S.D. Tex. Feb. 11, 2015) ............................................... 11

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................................ 8

Plaintiff AA Medical, P.C. ("Plaintiff") hereby respectfully files this Opposition to the Motion for Summary Judgment and the Motion to Dismiss the Complaint filed by Centene Corporation, d/b/a Fidelis Care ("Defendant). For the reasons set out below, the Court should deny the motion.

### INTRODUCTION

Defendant files a motion for summary judgment on the issue whether Centene Corporation ("Centene") is the wrong defendant and a motion to dismiss on other grounds. It contends that New York Quality Healthcare ("NYQHC") "operates" Fidelis. It concedes that NYQHC is a wholly owned subsidiary of Centene. But it fails to provide undisputed evidence as a matter of law pursuant to Fed. R. Civ. P. 56 that Centene does not operate, administer, and most importantly, own, Fidelis Care. Numerous examples from Fidelis Care's own website reveals that Centene operates and administers Fidelis Care, none of which are rebutted by the Declaration of Thomas Halloran ("Hallowan Decl."). Halloran is the President of NYQHC and also Senior Vice President of Centene.

For example, "Payment Policy: Emergency Department and Management Claims Adjustment," found on Fidelis Care's website, dated June 1, 2022, defines "Health Plan" as a health plan "that is operated or administered, in whole or part, by Centene Management Company LLC or any of such health plan's affiliates, as applicable." Declaration of Robert J. Axelrod, Exh. 1. The same definition applies in "Clinical Policy: Out of Network, dated July, 2022. Axelrod Decl. Exh. 3. The document entitled "Join Our Team," which references "Fidelis Care, a Centene Company," states that Fidelis Care is "a wholly owned subsidiary of Centene Corporation." Axelrod Decl. ¶ 3. In short, NYQHC appears to be the licensed entity through which Centene

offers health insurance in New York State, using Fidelis Care as its brand name, but NYQHC does not operate, administer, or own Fidelis Care. Centene does.

Defendant also contends that New York State Catholic Health Plan "(NYSCHP"), which operated Fidelis Care prior to July 1, 2018, "retained responsibility" for claims with dates of service prior to this date, pointing to an Asset Purchase Agreement ("APA"). Halloran refused to opine on the meaning of the APA, including this precise contention. However, section 8.03 of the APA obligates Centene is indemnify NYSCHP for "assumed liabilities," defined in section 2.03 as "Buyer shall assume liabilities whether arising before or after the closing), other than excluded liabilities . . . all liabilities under the assigned contracts . . . [and] all liabilities directly related to buyer's ownership or operation of business and purchased assets." "Excluded liabilities" under section 2.04 is defined as "any liabilities raising under seller employer plans." Thus, it is at minimum ambiguous whether these intertwined provisions make NYSCHP liable for the unjust enrichment claims in this case, given the indemnity provision making Centene the real party in interest. Fed. R. Civ. P. 17(a). For these reasons, defendant's motion for summary judgment should be denied.

Defendant moves to dismiss contending that the sole forum is the dispute resolution process set out under the New York Emergency Medical Services and Surprise Bills Act (the "Surprise Bills Act"), citing *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, 167 A.D.3d 461 (1st Dep't 2018). However, the court in *AA Medical, P.C. v. Healthfirst*, slip op. (N.Y. Sup. Ct., Suffolk Co., Dec. 13, 2022), which defendant attaches to its papers, held that *Buffalo* "does not, as defendant suggests, preclude a claim for unjust enrichment but merely states that there is no private right of action to enforce the provisions of the New York Emergency Medical Services and

Surprise Bills Act. Accordingly, this court finds that plaintiff has adequately pled a claim for unjust enrichment."

Defendant also contends that Plaintiff's claim for unjust enrichment fails because Plaintiff did not establish that it conferred a direct benefit to Defendant. This assertion is belied by the fact, as pled, that Defendant received a benefit because Plaintiff provided treatment to Defendant's plan members. *El Paso Healthcare Sys. Ltd. v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) ("While it is true that the immediate beneficiaries of the medical services were the patients, and not Molina, that company did receive the benefit of having its obligations to its plan members . . . discharged.").

Finally, Defendant contends that the claims should be dismissed because Plaintiff does not "demonstrate" that that the under-reimbursed amount is the usual and customary rate. First, Plaintiff is not required to "demonstrate" or provide evidence on a motion to dismiss and under Fed. R. Civ. P. 8. Second, Plaintiff does not allege that the under-reimbursed amount is the usual and customary rate; rather it alleges that Plaintiff is entitled to the usual and customary rate (to be determined at trial) on its unjust enrichment claim, a fact Defendant concedes.

## STATEMENT OF FACTS

There are three patients in the Consolidated Amended Complaint ("CAC"). For patient DA, Plaintiff's surgeon performed emergency surgery, for which Plaintiff billed $106,606.32 and Defendant reimbursed $0. CAC ¶¶ 10-12. For Patient DR, Patient's surgeon performed a total hip replacement, for which Plaintiff billed $99,269.40 and Defendant paid $690.37, leaving an unreimbursed amount of $98,579.03. CAC ¶¶ 21-23. For patient RS, Plaintiff's surgeon evaluated the patient in the emergency room and performed emergency surgery and follow up surgery, for

which Plaintiff billed $127,760.02 and Defendant paid $812.99, leaving an unreimbursed amount of $127,747.03. CAC ¶¶ 25-26.

## ARGUMENT

### A. Standard of Review

A court shall grant summary judgment only if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Fisher v. Mermaid Manor Home for Adults, LLC*, 192 F. Supp. 3d 323, 327 (E.D.N.Y. 2016). The role of the court is not to resolve disputed issues of facts but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, the court must construe all facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. *Id.*; *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

Fed. R. Civ. P. 12(b)(6) permits the court to dismiss a complaint only if a plaintiff fails to state a claim upon which relief can be granted. When ruling on a motion to dismiss the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Neilsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court must take all allegations in the complaint and treat them as true and view them in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The issue in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375,

8

378 (2d Cir. 1995)) ([T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiffs' claims. *Halebian v. Berv.*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 158 (2d Cir. 2006)).

### B. The Court Should Deny Defendant's Partial Motion for Summary Judgment

At the heart of Defendant's motion for summary judgment is its contention that NYQHC "operates" Fidelis. It concedes that NYQHC is a wholly owned subsidiary of Centene. But it fails to provide undisputed evidence as a matter of law pursuant to Fed. R. Civ. P. 56 that Centene does not operate, administer, and most importantly, own, Fidelis Care. Numerous examples from Fidelis Care's own website reveals that Centene operates and administers Fidelis Care, none of which are rebutted by the Halloran Declaration. Halloran is the President of NYQHC and also Senior Vice President of Centene.

Halloran simply and without evidence states in his Declaration that NYQHC "offers and operates" the health plans under the brand name of Fidelis Care. He does not state that Centene owns Fidelis Care, nor does he state that Centene does not operate Fidelis Care. Fidelis Care is a brand name, not a stand-alone plan, so who owns and operates Fidelis Care is critical in determining who is the proper defendant.

The evidence demonstrates that Centene owns and operates Fidelis Care. For example, "Payment Policy: Emergency Department and Management Claims Adjustment," found on Fidelis Care's website, dated June 1, 2022, defines "Health Plan" as a health plan "that is operated or administered, in whole or part, by Centene Management Company LLC or any of such health

9

plan's affiliates, as applicable." Axelrod Decl., Exh. 1; Response to Rule 56.1 Statement ¶¶ 4, 6. The same definition applies in "Clinical Policy: Out of Network, dated July, 2022. Axelrod Decl. Exh. 3; Response to Rule 56.1 Statement ¶¶ 4, 6. The document entitled "Join Our Team," which references "Fidelis Care, a Centene Company," states that Fidelis Care is "*a wholly owned subsidiary of Centene Corporation*." Axelrod Decl. ¶ 3 (emphasis added); Response to Rule 56.1 Statement ¶¶ 4, 6. The document entitled "Fidelis Care to Join Centene," states that "Fidelis Care has taken a major step to ensure that the Company's mission will be strengthened for the future by reaching an agreement under which we will become *Centene's health plan in New York State*." Axelrod Decl. ¶ 2 (emphasis added); Response to Rule 56.1 Statement ¶¶ 4, 6. Nothing in these documents makes any reference to NYQHC.

In short, NYQHC appears to be the licensed entity through which Centene offers health insurance in New York State, using Fidelis Care as its brand name, but NYQHC does not operate, administer, or own Fidelis Care. Centene does. The Halloran Declaration provides no evidence to the contrary.

With respect to NYSCHP, which operated Fidelis Care prior to July 1, 2018, Defendant states that NYSCHP "retained responsibility" for claims with dates of service prior to this date, pointing to an Asset Purchase Agreement ("APA"). Halloran refused to opine on the meaning of the APA, including this precise contention. However, section 8.03 of the APA obligates Centene is indemnify NYSCHP for "assumed liabilities," defined in section 2.03 as "Buyer shall assume liabilities (whether arising before or after the closing), other than excluded liabilities . . . all liabilities under the assigned contracts . . . [and] all liabilities directly related to buyer's ownership or operation of business and purchased assets." "Excluded liabilities" under section 2.04 is defined as "any liabilities raising under seller employer plans." Thus, it is at minimum ambiguous whether

10

these intertwined provisions make NYSCHP liable for the unjust enrichment claims in this case, given the indemnity provision making Centene the real party in interest. Fed. R. Civ. P. 17(a). *See Southwest Risk LLP v. Ironshore Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS 16444, *3 (S.D. Tex. Feb. 11, 2015); *Oscar Gruss & Son v.* Hollander, 337 F.3d 186, 193 (2d Cir. 2003); *NCUA Bd. V. Deutche Bank Nat'l Trust, Co.*, 410 F. Supp. 3d 662, 673-74 (S.D.N.Y. 2019). For these reasons, defendant's motion for summary judgment should be denied.

## C. The Court Should Deny Defendant's Motion to Dismiss

Defendant moves to dismiss contending that the sole forum is the dispute resolution process set out under the Surprise Bills Act, citing *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, 167 A.D.3d 461 (1st Dep't 2018). However, the court in *AA Medical, P.C. v. Healthfirst*, *slip op.* (N.Y. Sup. Ct., Suffolk Co., Dec. 13, 2022), which defendant attaches to its papers, held that *Buffalo* "does not, as defendant suggests, preclude a claim for unjust enrichment but merely states that there is no private right of action to enforce the provisions of the New York Emergency Medical Services and Surprise Bills Act. Accordingly, this court finds that plaintiff has adequately pled a claim for unjust enrichment." In addition, the Surprise Bills Act does not preempt a cause of action for unjust enrichment, nor does it establish the exclusive remedy for the under-reimbursement of a claim.

Defendant also contends that Plaintiff's claim for unjust enrichment fails because Plaintiff did not establish that it conferred a direct benefit to Defendant. This assertion is belied by the fact, as pled, that Defendant received a benefit because Plaintiff provided treatment to Defendant's plan members. *El Paso Healthcare Sys. Ltd. v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) ("While it is true that the immediate beneficiaries of the medical services were the patients, and not Molina, that company did receive the benefit of having its obligations

11

to its plan members . . . discharged."). This benefit is direct, not indirect. *See Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 2021 U.S. Dist. LEXIS 185009 (S.D.N.Y. Sept. 28, 2021), (upholding the unjust enrichment claim, and noting that "the insurer's benefit 'is not the provision of the healthcare services *per se* but rather the discharge of the obligation the insurer owes to its insured,'" quoting *Plastic Surgery Ctr. PA v. Aetna Life Ins. Co.,* 967 F.3d 218, 240 (3d Cir. 2020)).

In *AA Med., P.C. v. Health First*, slip op. *(*N.Y. Sup.Ct. Suffolk Co. Dec. 13, 2022), the court noted: "Here, defendant argues that Plaintiff's claim for unjust enrichment is fatally flawed because defendant received no benefit from the provision of emergency room services. However, the court is not persuaded by this argument as 'an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees.' *Emergency Phy. Servs. of N.Y. v. UnitedHealth Group*, 2021 WL 447166."

Defendant cites to inapposite *quantum meruit* cases, not unjust enrichment cases, which have different elements including an "expectation of compensation" requirement which translates to "at the behest of" another. An unjust enrichment claim does not have this element. It is well established that "[t]o prevail on a claim for unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Citibank, N.A. v. Walker*, 12 A.D.3d 480 (2d Dep't 2004). By contrast, the elements of a *quantum meruit* claim are (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the services. *Candreva v. Ultra-Kote Technology, Ltd.*, 44 A.D.3d 601 (2d Dep't 2007).

An unjust enrichment claim lies against a health insurer brought by a healthcare provider. *See Josephson v. Oxford Health Ins., Inc.*, 2012 N.Y. Misc. LEXIS 3589 (Sup. Ct. Nasau Co.

12

2012) ("to prevent injustice, an out-of-network provider who has not been paid at reasonable and customary rates may maintain an action for unjust enrichment").

The Complaint properly alleges an unjust enrichment claim. *See Mandarin Trading Ltd. v. Widenstein*, 16 N.Y.3d 173, 181-82 (2011). In *Mandarin*, there was no requirement to show an expectation of compensation, which is an element only of a *quantum meruit* claim.

For this reason, *Pekler v. Health Ins. Plan of Greater NY*, 888 N.Y.S. 2d 196 (2d Dep't 2009); and *Kirell v. Vytra Health Plans of Long Island, Inc.*, 815 N.Y.S. 2d 185 (2d Dep't 2006), cited by Defendant, are inapposite. They are *quantum* meruit claims. In *Josephson v. United Healthcare Corp.*, 2012 U.S. Dist. LEXIS 144830 (E.D.N.Y. July 24, 2012), the plaintiff alleged that United was unjustly enriched in the form of higher premiums.

Finally, Defendant contends that the claims should be dismissed because Plaintiff does not "demonstrate" that that the under-reimbursed amount is the usual and customary rate. First, Plaintiff is not required to "demonstrate" or provide evidence on a motion to dismiss and under Fed. R. Civ. P. 8. Second, Plaintiff does not allege that the under-reimbursed amount is the usual and customary rate; rather it alleges that Plaintiff is entitled to the usual and customary rate (to be determined at trial) on its unjust enrichment claim, a fact Defendant concedes.

## **CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment and its motion to dismiss. If the Court were to grant any part of these motions, Plaintiff respectfully requests the opportunity to replead.

Dated:	February 17, 2023

                                                                        Respectfully submitted,

                                                                        /s/ Robert J. Axelrod
                                                                        AXELROD LLP
                                                                        1465 Fifth Avenue, No. 7D
                                                                        New York, NY 10035
                                                                        (646) 986-4444

                                                                        *Attorney for AA Medical, P.C.*