**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AA MEDICAL, P.C.,<br><br>                      Plaintiff,<br><br>             v.<br><br>CENTENE CORPORATION, d/b/a FIDELIS<br>CARE,<br><br>                      Defendant. | Case No. 2:21-cv-5363 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT CENTENE**
**CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO**
**DISMISS PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT**

Robert B. Kornweiss
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022
Telephone:    (212) 223-4000
Facsimile:     (212) 223-4134
rkornweiss@crowell.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT .....................................................................................................................3

I.      CENTENE IS NOT A PROPER DEFENDANT............................................3

II.     THIS COURT IS NOT A PROPER FORUM FOR THIS DISPUTE
        OVER SURPRISES MEDICAL BILLS. ..........................................................6

III.    PLAINTIFF DID NOT OPPOSE, AND THEREFORE CONCEDED,
        DISMISSAL OF ITS BREACH OF IMPLIED CONTRACT CLAIMS. .......................7

IV.     PLAINTIFF HAS NOT PLED FACTS SUFFICIENT TO ASSERT A
        CLAIM FOR UNJUST ENRICHMENT .......................................................8

V.      PLAINTIFF HAS NOT PLED FACTS PLAUSIBLY SHOWING A
        VIOLATION OF THE LAW...........................................................................10

CONCLUSION................................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AA Medical, P.C. v. HealthFirst*,
No. 604231/2022 slip op. (N.Y. Sup. Ct., Suffolk Co., Dec. 13, 2022) ..............................6, 7

*Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*,
No. 6:03-cv-01121 (PCF), 2004 WL 6225293 (M.D. Fla. Mar. 8, 2004) ................................9

*Air Evac EMS Inc. v. USAble Mut. Ins. Co.*,
No. 4:16-cv-00266 (BSM), 2018 WL 2422314 (E.D. Ark. May 29, 2018) ............................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................10

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*,
No. 11-cv-02775 (JBS) (JS), 2012 WL 762498 (D.N.J. Mar. 6, 2012)...................................9

*Buffalo Emergency Assoc., LLP v. Aetna Health, Inc.*,
No. 651937/2017, 2017 WL 5668420 (N.Y. Sup. Ct. Nov. 27, 2017), *aff'd*,
167 A.D.3d 461 (2018) .........................................................................................................6, 7

*Encompass Office Sols., Inc. v. Ingenix, Inc.*,
775 F. Supp. 2d 938 (E.D. Tex. 2011)......................................................................................9

*Hanig v. Yorktown Cent. Sch. Dist.*,
384 F. Supp. 2d 710 (S.D.N.Y. 2005).......................................................................................7

*Hialeah Physicians Care, LLC v. Connecticut Gen. Life Ins. Co.*,
No. 13-cv-21895 (JLK), 2013 WL 3810617 (S.D. Fla. July 22, 2013)...................................9

*M.M. ex rel. J.M. v. New York City Dep't of Educ.*,
No. 09 Civ. 5236, 2010 WL 2985477 (S.D.N.Y. July 27, 2010) .............................................7

*Josephson v. United Healthcare Corp.*,
No. 11-CV-3665 JS ETB, 2012 WL 4511365 (E.D.N.Y. Sept. 28, 2012) ...............................9

*Kirell v. Vytra Health Plans Long Island, Inc*.
29 A.D.3d 638 (2d Dep't 2006) ................................................................................................9

*MC1 Healthcare, Inc. v. United Health Grp., Inc.*
; Civ No. 3:17-CV-01909 (KAD), 2019 WL 2015949 (D. Conn. May 7, 2019) ....................9

*Pekler v. Health Ins. Plan of Greater N.Y.*,
888 N.Y.S.2d 196 (2d Dep't 2009)............................................................................................9

*Rowe Plastic Surgery of Long Is., P.C. v. Oxford Health Ins. Co., Inc.*,
  No. 702017/2022, 2022, NY Slip Op 33149(U) (Sup. Ct., Queens County
  2022) ..........................................................................................................................................9

*Sasson Plastic Surgery, LLC v. UnitedHealthcare of New York, Inc*.,
  No. 17CV1674SJFARL, 2021 WL 1224883 (E.D.N.Y. Mar. 31, 2021),
  *reaffirmed in relevant part on reconsideration*, No. 17-cv-1674 (SJF) (ARL),
  2022 WL 2664355 (E.D.N.Y. Apr. 26, 2022) ........................................................................8

*Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*,
  150 F. Supp. 2d 556 (S.D.N.Y. 2001)......................................................................................9

*Youmans v. Schriro*,
  No. 12 Civ. 3690, 2013 WL 6284422 (S.D.N.Y. Dec. 3, 2013)...............................................7

**Statutes**

N.Y. Fin. Law § 601 ...........................................................................................................................6, 7

N.Y. Fin. Law § 604 ...........................................................................................................................6, 7

N.Y. Fin. Law § 605 ...........................................................................................................................6, 7

N.Y. Fin. Law § 607 ...........................................................................................................................6, 7

**Rules**

Fed. R. Civ. P. 56(c)(4)............................................................................................................................3

Fed. R. Civ. P. 56.1.................................................................................................................................4

Defendant Centene Corporation ("Centene") respectfully submits this reply memorandum in further support of its motion for summary judgment and motion to dismiss the Consolidated Amended Complaint (Dkt. #31-1, Motion; Dkt. #31-2, Memorandum in Support ("Mem.")), and in response to Plaintiff's Opposition thereto (Dkt. #32).

## PRELIMINARY STATEMENT

Plaintiff's case against Centene should be dismissed in its entirety and with prejudice. Nothing in Plaintiff's Opposition changes that plain conclusion of law.

Plaintiff dedicates much of its Opposition trying to manufacture a dispute of fact as to whether Centene or New York Quality Healthcare Corporation ("NY Quality") "owns" the brand name "Fidelis Care." Opp. at 9. But there is no real dispute. The direct evidence *from the President of NY Quality* is that "NY Quality currently offers and operates the health plans provided to New York residents under the brand name 'Fidelis Care'". Declaration of Thomas Halloran (("Halloran Decl.", Dkt. #31-3) ¶ 5; Statement of Material Facts ("SOF", Dkt. #31-1) ¶¶ 4, 6. That NY Quality, as a subsidiary of Centene, uses certain corporate policies authored by Centene does not change that NY Quality is the sole entity responsible for Fidelis Care members and claims since July 1, 2018, and therefore the sole proper defendant for such claims.

Nor does the indemnification clause (§ 8.03) in the Asset Purchase Agreement ("APA", Dkt. # 31-4) between Centene and New York Catholic State Health Plan ("NYSCHP") warrant Centene remaining in the case for claims with dates of service on and before June 30, 2018. Plaintiff acknowledges that "excluded liabilities" are not indemnified (Opp. at 6), but does not acknowledge or address the key language stating that "excluded liabilities" includes "all Liabilities relating to or resulting from any breaches of the Assigned contracts prior to the Closing Date, whether arising prior to, on or after the Closing Date." APA § 2.04(h). By the plain terms of this plain language, NYSCHP, the seller, remained responsible for claims prior to

the July 1, 2018 closing date, not Centene.  Summary judgment should be granted dismissing Centene as an improper defendant.

Plaintiff's other arguments against dismissal also fail.  As to Centene's argument that the proper forum for this dispute is the independent dispute resolution process under the New York Emergency Medical Services and Surprise Bills Act ("Surprise Bills Act") (Mem. at 8-10), Plaintiff acknowledges there is no private cause of action under the Surprise Bills Act, but claims its case should survive because it labelled the cause of action "unjust enrichment."  Opp. at 6-7.  But Plaintiff's claim for unjust enrichment claim is really just a Surprise Bills Act claim dressed up as an unjust enrichment claim—an argument Plaintiff does not address in its Opposition.  The only proper forum for a Surprise Bills Act claim, however labelled, is the dispute resolution forum established by the state for such claims.

As to Centene's claim for dismissal of Plaintiff's implied contract claims (Count I-III) (Mem. at 10-12), Plaintiff did not even respond.  The Court should treat this argument as conceded and Plaintiff's implied contract claims as abandoned.

On Centene's argument regarding the unjust enrichment counts (Counts IV-VI) (Mem. at 12-13), Plaintiff attacks the case law relied upon by Centene because it purportedly addressed quantum meruit rather than unjust enrichment claims.  Opp. at 11-13.  But under New York law, quantum meruit and unjust enrichment claims are reviewed through the same framework. Both require a direct benefit to the plaintiff from the defendant, and dismissal is warranted for both claims where, as here, that element is missing.

And as to Centene's final argument regarding the absence of facts supporting Plaintiff's claim (Mem. at 14), Plaintiff does not even try to justify its position that each surgery warrants payment of $98,000 or more.  Plaintiff instead rests on the argument that it need not prove its

2

damages at this stage.  Opp. at 13.  But while Plaintiff need not *prove* its case in its pleading, it does need to offer facts showing its claim is plausible.  Plaintiff offers no facts showing why the exorbitant sums it seeks are "reasonable" or "usual and customary," even though that purports to be the foundation of its claim.  If Plaintiff has such facts, it must plead them.  Absent such facts, Plaintiff's claim should be dismissed.

## ARGUMENT

### I.  CENTENE IS NOT A PROPER DEFENDANT.

Plaintiff's Opposition offers three arguments for why it contends Centene should remain a defendant.  Each is unavailing.

First, Plaintiff argues that Centene has provided "no evidence" showing that NY Quality, not Centene, operates, administers and owns Fidelis Care.  Opp. at 10.  But this is simply wrong.  The Halloran Declaration attached to Centene's motion *is evidence*, which is admissible on a motion for summary judgment under Federal Rule of Civil Procedure 56(c)(4).  Mr. Halloran is the President of NY Quality and a Senior Vice President at Centene, so he obviously knows what plans and brands NY Quality offers and operates.  His declaration was produced as part of a now-complete discovery record on the issue of Centene as a proper defendant.  And Mr. Halloran stated plainly in that declaration "NY Quality currently offers and operates the health plans provided to New York residents under the brand name 'Fidelis Care'".  Halloran Decl. ¶ 5, *see also* ¶ 8; SOF ¶¶ 4, 6.  He further stated that "Centene is not licensed to provide health insurance in New York." Halloran Decl. ¶ 4; SOF ¶ 1.  This evidence, from a person with knowledge, makes clear that NY Quality is financially responsible for Fidelis members and claims after July 1, 2018, not Centene.

Second, Plaintiff argues that various policies on Fidelis Care's website suggest that Centene "owns" Fidelis Care, and that those documents do not expressly mention NY Quality. Opp. at 9-10.  But this argument tries to create an issue where none exists.  There is no dispute

that Fidelis Care is part of the Centene family; as Mr. Halloran states, "[NY Quality] is a wholly-owned subsidiary of Centene."  Halloran Decl. ¶ 2; SOF ¶ 3.  But that does not mean that Centene is the corporate entity that offers the health plan in New York.  The unrebutted evidence, captured in the Halloran Declaration, is that NY Quality is the licensed entity that provides health insurance under the Fidelis Care brand name.  *See* Dkt. #32-1, Plaintiff's Response to Defendant's Rule 56.1 Statement ¶¶ 1, 3 (Plaintiff agreeing that NYQHC is licensed and approved to provide health insurance in New York, while Centene is not).  Fidelis Care members are NY Quality members, and therefore any request for additional reimbursement for services to those members should be directed to NY Quality, not Centene.  Indeed, if one goes to the rate filings website maintained by the New York Department of Financial Services, it shows rate filings for "Fidelis (New York Quality Healthcare Corporation)."  *See* Ex. E, Screenshot from https://myportal.dfs.ny.gov/web/prior-approval/nyqhc (last visited Mar. 25, 2023).

The fact that various Fidelis policies mention Centene does not change this analysis.  For one, it is unsurprising that a health plan operated by a Centene subsidiary would at times use Centene corporate policies for its operations.  That is the sort of corporate efficiencies one would expect for a large corporation like Centene.  But this does not mean that NY Quality and Centene are the same entity.  As Mr. Halloran describes, they are distinct corporate entities, with NY Quality as a subsidiary of Centene.  Halloran Decl. ¶ 3; SOF ¶ 2.  There is nothing in the documents attached to Plaintiff's Opposition that indicates otherwise—in fact, to the contrary, even the section of the documents highlighted by Plaintiff says Fidelis Care is "a wholly owned subsidiary of Centene Corporation."  Opp. at 10 (citing Axelrod Decl. ¶ 3).

Plaintiff has not argued for piercing the corporate veil (*see* Mem. at 7 (noting this point)), nor could Plaintiff make this argument since, among other things, NY Quality holds the license to

operate a health plan in New York and Centene does not.  The bottom line is that NY Quality has Fidelis members and pays Fidelis claims, and to the extent any additional reimbursement is owed for services to Fidelis members on and after July 1, 2018, that money should be sought from NY Quality, not Centene.

Third, Plaintiff argues that Centene should remain a party because Plaintiff contends the Asset Purchase Agreement between Centene and NYSCHP requires Centene to indemnify NYSCHP for claims with dates of service on or before June 30, 2018.  Opp. at 10-11.  But this argument misreads the APA.  Plaintiff acknowledges that the indemnification in Section 8.03 of the APA is keyed to "assumed liabilities," which includes "liabilities (whether arising before or after the closing), *other than excluded liabilities*."  Opp. at 10 (citing APA § 2.03 (defining assumed liabilities)) (emphasis added).  But Plaintiff then conspicuously avoids mentioning the critical language in the APA—which was highlighted in Centene's Memorandum (at 6)—defining "excluded liabilities" to include "all liabilities relating to or resulting from any breaches of the assigned contracts prior to the [July 1, 2018] Closing Date whether arising prior to, or on or after the Closing Date." APA § 2.04(h).  This language plainly puts into the category of "excluded liability"—and hence outside the scope of the indemnification in Section 8.03—disputes with providers like Plaintiff for claims with dates of service on and before June 30, 2018.  As noted in Centene's motion (Mem. at 6), those claims—here the "DA" and "DR" claims—are the responsibility of NYSCHP, not Centene or NY Quality.

Instead of citing this applicable language in Section 2.04(h), Plaintiff misquotes and cites to language in Section 2.04(f) including as an excluded liability "any liabilities arising under or in connection with any Seller Employe[e] Plans." Opp. at 6, 10.  It is not clear in Plaintiff's brief what significance Plaintiff ascribes to this language, aside from a conclusory assertion that it

somehow defeats Centene's request for summary judgment. But for the Court's reference, this term simply states that Centene was not assuming responsibility for employee benefit plans for NYSCHP employees. *See* APA Art. I (defining "Seller Employee Plan"). This term has no bearing on the question at bar—whether Centene has to indemnify claims to NYSCHP on or before June 30, 2018. By the plain terms of Section 2.04(h) and 8.03 of the APA, it does not.[1]

Centene is an improper party, and summary judgment should be granted dismissing Centene from this case.

## II.   THIS COURT IS NOT A PROPER FORUM FOR THIS DISPUTE OVER SURPRISE MEDICAL BILLS.

In its Motion, Centene argued this case should be dismissed because this claim involves a surprise medical bill, and should therefore have been brought before an independent review organization, not this Court, under New York law. *See* Mem. at 8-10 (citing the Surprise Bills Act, N.Y. Fin. Serv. §§ 601, 604, 605, 607). Plaintiff's Opposition acknowledges that the Surprise Bills Act does not provide a private cause of action, as set forth in *Buffalo Emergency Assoc., LLP v. Aetna Health, Inc.*, No. 651937/2017, 2017 WL 5668420, at \*\*2-3 (N.Y. Sup. Ct. Nov. 27, 2017), *aff'd,* 167 A.D.3d 461 (2018). Opp. at 11. But Plaintiff argues that its claim should be allowed because it pleads a claim for unjust enrichment, not a Surprise Bills Act claim, which the court allowed in *AA Medical, P.C. v. HealthFirst*, No. 604231/2022 slip op. (N.Y. Sup. Ct., Suffolk Co., Dec. 13, 2022) (NYSCEF Doc. No. 30). Opp. at 11.

But what Plaintiff does not address—and what is the crux of Centene's argument on this point—is that Plaintiff labelling its case as one for unjust enrichment is illusory. As noted in

---

[1] The cases cited by Plaintiff on this point (Opp. at 7) are inapposite. At most, they stand for the proposition that a real party in interest is a proper defendant. But they do not support the idea that a party should remain a defendant when the contract's language defeats any argument for indemnity.

Centene's motion (Mem. at 9-10), Plaintiff acknowledges each of its claims is for a "surprise bill" for emergency services under New York law, and it seeks "reasonable" or "usual and customary" rates.  This is a Surprise Bills Act claim; Plaintiff just tries to call it something else. The *HealthFirst* case relied upon by Plaintiff did not address the scenario at bar where the "unjust enrichment" Plaintiff pled was really and transparently a Surprise Bills Act claim in disguise.  *See Buffalo Emergency Assocs.*, 2017 WL 5668420, at *3 (Court should treat statutory claim and common law claim the same when there is "no discernable difference" between them.).

Per *Buffalo Emergency Asssocs.*, there is no private cause of action for a Surprise Bills Act claim.  And the proper procedure is for the Court to dismiss this Surprise Bills Act claim so it can be pursued through the independent resolution organization forum provided in statute.  N.Y. Fin. Law §§ 601, 604, 605, 607.

## III.   PLAINTIFF DID NOT OPPOSE, AND THEREFORE CONCEDED, DISMISSAL OF ITS BREACH OF IMPLIED CONTRACT CLAIMS.

In its opening memorandum, Defendant sought dismissal of Plaintiff's breach of implied contract claims because Plaintiff failed to plead sufficient facts to assert these claims, noting that a state court dismissed similar claims from this same Plaintiff late last year.  Dkt. #31-2, at 10-12 (citing *AA Medical, P.C. v. HealthFirst*, slip op. (attached as Exhibit D to Motion)).   In its Opposition, Plaintiff does not address—let alone contest—Centene's arguments on this point. Therefore, this Court should treat Centene's arguments against Plaintiff's implied contract claims as conceded and abandoned by Plaintiff.  *See Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) (finding that plaintiff abandoned certain claims by failing to oppose dismissal of them); *Youmans v. Schriro*, No. 12 Civ. 3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims."); *M.M. ex rel. J.M. v. New York City Dep't of Educ.*,

No. 09 Civ. 5236, 2010 WL 2985477, *6 (S.D.N.Y. July 27, 2010) (finding failure to respond to

an argument constitutes abandonment by Plaintiff of that argument).

## IV.   PLAINTIFF HAS NOT PLED FACTS SUFFICIENT TO ASSERT A CLAIM FOR UNJUST ENRICHMENT

Next, Plaintiff argues that its its unjust enrichment claim should not be dismissed because

"Defendant received a benefit because Plaintiff provided treatment to Defendant's plan

members."  Opp. at 11.  In so doing, Plaintiff tries to distinguish various cases cited by Centene

in its Memorandum on the grounds that unjust enrichment claims are distinct from quantum

meruit claims because quantum meruit claims include an "expectation of compensation" element.

Opp. at 12.   As a threshold matter, this distinction runs contrary to established New York

precedent, which recognizes that "[q]uantum meruit and unjust enrichment are not separate

causes of action and are therefore analyzed under the same principles."  *Sasson Plastic Surgery,*

*LLC v. UnitedHealthcare of New York, Inc.*, No. 17CV1674SJFARL, 2021 WL 1224883, at *14

(E.D.N.Y. Mar. 31, 2021), *reaffirmed in relevant part on reconsideration*, No. 17-cv-1674 (SJF)

(ARL), 2022 WL 2664355, at *6 (E.D.N.Y.  Apr. 26, 2022) ("Sasson's claims for unjust

enrichment and quantum meruit were properly analyzed in the challenged Order by applying a

single framework").  Moreover, the position offered by Plaintiff that "expectation of

compensation" is not a part of unjust enrichment (Opp. at 12) defies logic, as it is hard to see how

it could be against equity and good conscience not to pay the Plaintiff if the Plaintiff never

expected to be paid in the first place.

Beyond this argument, Plaintiff points to three cases allowing an unjust enrichment claim

to advance against a health plan based on the allegation that a provider provided services to a

health plan, which constituted a direct benefit to the health plan.  Opp. at 11-12.  But as Centene

noted in its opening motion (*see* Mem. at 13 n. 1), these cases remain in the minority.  The

majority position, which this Court should follow, recognizes that a provider offering services to an insured is not a direct benefit to a health plan sufficient for unjust enrichment because the services run only between the provider and the insured.  This was the holding in the cases cited in Centene's motion (Mem. at 12-13) such as *Rowe Plastic Surgery of Long Is., P.C. v. Oxford Health Ins. Co., Inc.,* No. 702017/2022, 2022, NY Slip Op 33149(U), *5 (Sup. Ct., Queens County 2022); *Josephson v. United Healthcare Corp.,* No. 11-CV-3665 JS ETB, 2012 WL 4511365, at *1 & *5 (E.D.N.Y. Sept. 28, 2012); *Pekler v. Health Ins. Plan of Greater N.Y.*, 888 N.Y.S.2d 196, 198 (2d Dep't 2009); and *Kirell v. Vytra Health Plans Long Island, Inc*. 29 A.D.3d 638, 639 (2d Dep't 2006).

This position is also echoed in a number of other jurisdictions applying similar state laws.  *See, e.g.*, *MC1 Healthcare, Inc. v. United Health Grp., Inc.*; Civ No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *10 (D. Conn. May 7, 2019); *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, No. 4:16-cv-00266 (BSM), 2018 WL 2422314, at *9 (E.D. Ark. May 29, 2018); *Hialeah Physicians Care, LLC v. Connecticut Gen. Life Ins. Co.*, No. 13-cv-21895 (JLK), 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-cv-02775 (JBS) (JS), 2012 WL 762498, at **8-9 (D.N.J. Mar. 6, 2012); *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 6:03-cv-01121 (PCF), 2004 WL 6225293, at **5-6 (M.D. Fla. Mar. 8, 2004); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011).

In dismissing a *quantum meruit* claim based on insurance company's failure to pay the full amount demanded by contractor for services performed for insured, the court in *Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) described this principle as follows:

9

> It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit.

So too here.  Plaintiff's unjust enrichment claim fails because it has not pled a direct benefit the provider conveyed to the health plan.

## V.     PLAINTIFF HAS NOT PLED FACTS PLAUSIBLY SHOWING A VIOLATION OF THE LAW

As a final point, Plaintiff contends that it is not required to plead facts demonstrating why its billed rate is "reasonable" and/or "usual and customary," or why the amount Plaintiff has already been paid for the claims does not meet this standard.  Opp. at 13.  But this is not the law.  Plaintiff's allegation in this case is that it is owed $98,000 or more per surgery for service provided to the health plan's insured.  If Plaintiff really thinks these eye-popping sums are what is really "reasonable" or "usual and customary," it needs to state the factual basis for this allegation in its complaint.  The absence of such facts renders Plaintiff's complaint deficient, as it has not stated facts explaining to the Court or Defendant why it is entitled to the relief it seeks. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting the obligation to "provide the grounds of [plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Plaintiff's claims should be dismissed for failure to state facts showing an entitlement to relief.

## CONCLUSION

For all of these reasons, Defendant respectfully requests the entry of an Order granting its partial motion for summary judgment and motion to dismiss Plaintiff's Amended Complaint in its entirety and with prejudice.

Dated: March 28, 2023

                                                Respectfully submitted,

                                               /s/ Robert B. Kornweiss
                                               Robert B. Kornweiss
                                               CROWELL & MORING LLP
                                               590 Madison Avenue
                                               New York, NY 10022
                                               Telephone:    (212) 223-4000
                                               Facsimile:     (212) 223-4134
                                               rkornweiss@crowell.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 28, 2023, a true and correct copy of the foregoing

was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel

or parties of record.


/s/ Robert B. Kornweiss
Robert B. Kornweiss