UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

AA MEDICAL, P.C.,

                       Plaintiff,         **REPORT AND RECOMMENDATION**

      v.                                           21-CV-5363 (JS) (ST)

CENTENE CORPORATION, d/b/a FIDELIS
CARE,

                       Defendant.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Before this Court is a motion to dismiss by Centene Corporation ("Centene") pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(1) and 12(b)(6) as well as motion for summary judgment by pursuant to FRCP 56(a). For the reasons below, I recommend Defendants' motion to dismiss be DENIED in part and GRANTED in part and that the motion for summary judgment be GRANTED.

## BACKGROUND

A.A. Medical, P.C. ("Plaintiff") is a surgical practice group operating in Stony Brook, New York. Am. Compl. ¶ 8, ECF No. 13. This case stems from surgical services provided by Plaintiff to three patients referred to as "DA," "DR," and "RS." Pl. Opp. Br. at 7, ECF No. 32. DA and RS received emergency surgery after evaluation by Plaintiff, services which are covered under the Emergency Medical Treatment and Active Labor Act (the "EMTALA"). *Id*; Am. Compl. ¶¶ 13, 29, ECF No. 13. DR received a "medically necessary" total hip replacement. Am Compl. ¶¶ 22-23, ECF No. 13.

All three patients had insurance through Fidelis Care. *Id* at ¶¶ 10, 21, 25. Plaintiff was considered "out-of-network" to Fidelis Care, meaning it did not participate in the network of

1

healthcare providers Fidelis Care holds contracts with. *Id* at ¶ 2. Following each surgery Plaintiff billed Fidelis Care. For DA, Plaintiff billed $106,603.32, of which Fidelis Care paid $0. *Id* at ¶ 12. For DR, Plaintiff billed $99,269.40, of which Fidelis Care paid $690.37. *Id* at ¶ 23. For RS, Plaintiff billed $127,760.02, of which Fidelis Care paid $812.99. *Id* at ¶ 28.

Until July of 2018, New York State Catholic Health Plan ("Catholic Health Plan") offered insurance in New York under the name "Fidelis Care."  Pl. R. 56.1 Statement ¶ 8, ECF No. 32-1. On July 1, 2018 Centene, the sole defendant in this action, purchased the health insurance assets from Catholic Health Plan in an agreement memorialized in an Asset Purchase Agreement dated September 12, 2017. *Id* at ¶ 5, 9. Centene is not licensed to provide health insurance in New York. *Id* at ¶ 1. However, Centene's wholly owned subsidiary, New York Quality Healthcare Corporation ("NYQHC") is licensed to do so. *Id* at ¶ 2. Which entity offers and operates health insurance under the brand name "Fidelis Care," and which entity is the proper defendant, is disputed by the parties and central to this motion for summary judgment. *Id* at ¶ 5.

Furthermore, the Asset Purchase Agreement governing Centene's purchase of Fidelis Care allocated liability for certain claims between Centene as the purchaser and Catholic Health Plan as the seller.  Centene alleges that it did not inherit any liabilities from services provided before July 1, 2018, while Plaintiff maintains that because Centene would be required under the terms of the agreement to indemnify Catholic Health Plan, Centene is the proper defendant. *Id* at ¶ 10. Patients DA and DR were provided medical services prior to July 1, 2018 while patient RS received services on July 4th and 5th of 2019.

Plaintiff filed suit in the Eastern District of New York alleging claims of breach of implied contract and unjust enrichment for Centene's failure to pay reimburse for treatment

2

provided to patients DA, DR, and RS. Am. Compl. ¶¶ 37-62. Plaintiff seeks to recover either the unreimbursed amount or the "reasonable" or "usual and customary" rates for such services under the New York Emergency Medical Services and Surprise Bills Act ("Surprise Bills Act"). Am. Compl. ¶ 4, ECF No. 13; Def. Br. at 9, ECF No. 31-2.

The parties conducted limited discovery on the issue of whether Centene is a proper defendant. Def. Br. at 5, ECF No. 31-2. Following completion of the limited discovery, Centene moved for summary judgment on the issue and also moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim. The Honorable Joanna Seybert referred both motions to me for a Report and Recommendation.

## LEGAL STANDARD

### I.   12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction Standard.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Donahue v. Suffolk County Family Court*, No. 19-CV-03785 (LDH) (LB), 2019 WL 5778076 at *1, (E.D.N.Y. Aug. 22, 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)) (internal quotations omitted). A party must have Article III standing to invoke a federal court's subject matter jurisdiction. *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018). The complainant bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Donahue*, 2019 WL 5778076 at *1. "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'"

3

*Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)) (alterations in original).

## II. 12(b)(6) Motion to Dismiss for Failure to State a Claim Standard

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the Plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* command that all elements of the Plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980 at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted) (*adopted by Giambrone v. Meritplan Ins. Co.,* 13-CV-7377, 2017 WL 2303507 (E.D.N.Y. May 24, 2017)).

## III. 56(a) Motion for Summary Judgment Standard.

Summary judgment is appropriate when the movant "shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.* The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Id.* at 254.

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

**DISCUSSION**

Centene presents two motions, a motion to dismiss pursuant to FRCP 12(b)(1) and 12(b)(6) as well as a motion for summary judgment pursuant to FRCP 56(a). While this Court recommends that Plaintiff has successfully pled two of its six claims, it nonetheless recommends that Centene's motion to dismiss should be granted as to four of Plaintiff's claims and that the motion for summary judgement be granted in its entirety.

**I.     Centene's Motion to Dismiss.**

   A.  *Plaintiff has Abandoned Its Claims for Breach of Implied Contract.*

Centene, in its initial briefing for this motion to dismiss, asserted that Plaintiff failed to sufficiently plead a claim for breach of implied contract for services provided to all three patients. Def. Br. at 10-11, ECF No. 31-2. Plaintiff, in its opposition briefing, failed to address Centene's argument and has appeared to abandon its claims for breach of implied contract. Def. Reply. Br. at 7, ECF No. 35. Accordingly, I recommend this Court deem the claims abandoned and grant Centene's motion to dismiss. *See Hanig v. Yorktown Cent. School Dist*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) (dismissing claim for failure to address movant's argument in responsive briefing).

    B.  *This Court Maintains Jurisdiction to Hear Plaintiff's Claim.*

Centene argues that this Court lacks jurisdiction to hear Plaintiff's claims as each are merely claims arising under the Surprise Bills Act that Plaintiff has disguised as common law breach of implied contract and unjust enrichment claims. Def. Br. at 9-10, ECF No. 31-2. The Surprise Bills Act contains no private right of action, instead requiring plaintiffs to participate in an independent dispute resolution process. N.Y. Fin. Serv. Law §§ 601, 605, 607. Thus, according to Centene, Plaintiff has no standing to pursue this action. Def. Br. at 10, ECF No. 31-2. In support of this, Centene cites to *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*, No. 651937/2017, 2017 WL 5668420, at *2-3 (N.Y. Sup. Ct. Nov. 27, 2017), *aff'd*, 167 A.D.3d 461 (2018).

The Southern District has previously examined the extent to which the courts of New York foreclosed common law actions related to the Surprise Bills Act in a series of cases brought by Buffalo Emergency Associates, LLP. In *Emergency Physician Services of New York v. UnitedHealth Group Inc* ("*Emergency Physician Services*"), the Southern District explained that in the Buffalo Emergency cases the "claims, as alleged, failed to state a cause of action because

6

they depended on the [Surprise Bill] Act itself as the sole source of duty the defendants purportedly breached." No. 20-CV-9183 (JGK), 2023 WL 2772285, at *7 (S.D.N.Y. Apr. 4, 2023) (internal quotations and alterations omitted). The Plaintiff in *Emergency Physician Services*, on the other hand, "stated an adequate common-law unjust enrichment claim under independent sources of law apart from the Act." *Id*. As discussed below Plaintiff has adequately stated a claim for unjust enrichment under New York law.[1] Thus, I recommend that this Court follow the Southern District's approach and determine that it has jurisdiction to hear Plaintiff's unjust enrichment claim.

  C. *Plaintiff has Stated a Claim for Unjust Enrichment for Services Rendered to Patients DA and RS but not to Patient DR.*

To state a claim for unjust enrichment "a plaintiff must establish (1) the defendant benefited, (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution*." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). In order to satisfy the first element it is essential that the plaintiff establish that it conferred a direct benefit on the defendant. *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000).

Centene argues that Plaintiff has failed to show it received any direct benefit from Plaintiff. Def. Br. at 12, ECF No. 31-2. In response, Plaintiff asserts that the cases Centene relies upon are inapposite *quantum meruit* cases as opposed to unjust enrichment and that recent case law has found a benefit in cases similar Plaintiff's. Pl. Opp. Br. at 12, ECF No. 32. I address each argument in turn.

---

[1] The Buffalo Emergency cases may however, preclude Plaintiff from bringing claims sounding in implied contract, as the source of the alleged duty arises solely under the Surprise Bills Act. *See Buffalo Emergency Assocs.,* LLP, 2017 WL 5668420 at *3 (barring claims where, "[w]ith respect to plaintiffs' breach of contract claim, the sole basis for the implied "minimum" rate for which plaintiffs were to be compensated at is the existence of the Act"). However, as discussed above, Plaintiff has abandoned its breach of implied contract claims.

7

Plaintiff's assertion that Centene may not rely on *quantum meruit* cases is flawed for two reasons. First and foremost, the assertion runs counter to recent case law in this district analyzing *quantum meruit* and unjust enrichment claims under a single framework. *See Sasson Plastic Surgery, LLC v. UnitedHealthcare of New York, Inc.*, No. 17-CV-1674 (SJF) (ARL), 2021 WL 1224883, at *14 (E.D.N.Y. Mar. 31, 2021), *affirmed in relevant part on reconsideration*, No. 17-cv-1674 (SJF) (ARL), 2022 WL 2664355, at *6 (E.D.N.Y. Apr. 26, 2022) ("Sasson's claims for unjust enrichment and quantum meruit were properly analyzed in the challenged Order by applying a single framework"). Secondly, in Plaintiff's subsequent argument that Centene received a direct benefit, Plaintiff itself relies on a *quantum meruit* decision to support its position. *See* Pl. Opp. Br. at 11, ECF No. 32 (citing *El Paso Healthcare Sys. Ltd. v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) (the plaintiff "has satisfied the four-prong test for *quantum meruit* . . . . While it is true that the immediate beneficiaries of the medical services were the patients, and not Molina, that company *did* receive the benefit of having its obligations to its plan members . . . discharged). Plaintiff should not be allowed to disqualify Centene from relying on *quantum meruit* decisions while doing so itself, especially where, as is the case here, the law is clear that such cases are analyzed under a single framework.

Proceeding to the Plaintiff's response on the merits, Plaintiff is correct that Centene did receive a benefit sufficient to support an unjust enrichment claim. New York courts have drawn a clear distinction between unjust enrichment cases involving emergency medical services, and those involving elective medical services. That distinction is dispositive of the issue here. New York courts first took up the issue in *New York City Health and Hospitals Corp. v. Wellcare of New York, Inc.* ("*Wellcare*"), 937 N.Y.S.2d 540 (N.Y. 2011). *Wellcare* addressed medical services provided pursuant to the EMTALA, under which a care provider must provide

8

emergency services without regard to a patient's insurance coverage or ability to pay. The Court determined that where "a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs it incurred in rendering the necessary treatment to the insurer's enrollees." *Id.* at 545. It is precisely because a hospital is required to provide such treatment that "payment of less than actual costs [is] unreasonable and, thus, inequitable." *Id* at 544 (internal quotations and citations omitted). In such an instance, the discharging of an insurer's duty to the insured through the provision of medical treatment is sufficient to support a claim of unjust enrichment. *Id* at 255.

However, the inverse is true in instances of voluntary or elective medial treatment. In such instances where an individual patient seeks medical care and the care provider is afforded an opportunity to provider or decline care, the benefit runs entirely to the patient and not an insurer. *Id* at 546. Since *Wellcare*, both federal and state courts in New York have hewn to this distinction. *See Emergency Physician Services of New York v. UnitedHealth Group, Inc.*, No. 20-CV-9183 (AJN), 2021 WL 4437166, at *12 (S.D.N.Y. Sept. 28, 2021); *AA Med., P.C. v. Health First*, slip op. (N.Y. Sup.Ct. Suffolk Co. Dec. 13, 2022) (ECF No. 31-6).

Centene relies exclusively on cases involving non-emergent, elective medical treatments. *See Pekler v. Health Ins. Plan of Greater NY*, 67 A.D.3d 758, 888 N.Y.S.2d 196 (2d Dept. 2009) (finding no benefit as doctor voluntarily provided medical treatment to patient at patient's behest); *Kirell v. Vytra Health Plans Long Island, Inc.*, 29 A.D.3d 638, 815 N.Y.S.2d 185 (2d Dept. 2006) (same); *Rowe Plastic Surgery of Long Is., P.C. v. Oxford Health Ins. Co., Inc.*, No. 702017/2022, 2022 NY Slip Op 33149(U), *5 (Sup. Ct., Queens County 2022) (same). Indeed two of these cases, *Pekler* and *Kirell* were the same cases that the Court in *Wellcare* considered and found unpersuasive. 937 N.Y.S.2d at 546. Plaintiff, however, relies entirely on cases

9

involving emergency services such as *Emergency Physicians Services*. See Pl. Opp. Br. at 11-12, ECF No. 32.

Thus, the determining factor in this case is whether Plaintiff has sufficiently pled that each patient's treatment in this case involved emergency services. Plaintiff has alleged that both DA and RS received emergency treatment under EMTALA, the same act at issue in *Wellcare*. *See* Am. Compl. ¶¶ 17, 29, ECF No. 13. Accordingly, Plaintiff has sufficiently pled a claim of unjust enrichment as to patients DA and RS as Centene received the benefit of having its obligation to those patients discharged. *Wellcare*, 937 N.Y.S.2d at 545. Plaintiff has failed however, to allege whether patient DR received emergency treatment, noting only that such treatment was "medically necessary." With no factual allegation that DR's treatment was emergent, therefore requiring Plaintiff to provide services, Plaintiff has failed to establish that Centene received any benefit from Plaintiff. I therefore recommend that this Court grant Centene's motion to dismiss as to the unjust enrichment claim for services rendered to DR but deny the motion as to the same claim for services provided to DA and RS.

  D.  *Plaintiff's Requested Relief is Sufficient to Survive a Motion to Dismiss.*

Centene further argues that Plaintiff's complaint should be dismissed as Plaintiff has failed to allege why the unreimbursed billed amounts for medical services provided are "reasonable" or "usual and customary" as defined by the Surprise Bills Act. Def. Br. at 14, ECF No. 31-2. However, in doing so, Centene misreads Plaintiff's complaint. Plaintiff clearly demands either "the unreimbursed amount or, alternatively, the 'reasonable,' or 'usual and customary,' rates" and does not purport to argue that the unreimbursed amounts are in fact the reasonable or usual and customary rate. Am. Compl. ¶ 4, ECF No. 13. Furthermore, under New York law, Plaintiff's remaining unjust enrichment claims are not limited to the reasonable or customary rates. Instead,

10

"where, as here, a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital *in full* for the costs incurred in rendering the necessary treatment." *Wellcare*, 937 N.Y.S.2d at 545 (emphasis added). I find that Plaintiff has sufficiently pled facts to satisfy the Rule 8 standard to demonstrate its costs incurred, the amount paid by Centene, if any, and the remaining unreimbursed amount. Plaintiff merely seeks a reasonable rate in the alternative.

## II. Centene's Summary Judgment Motion.

The parties have engaged in limited discovery on the issue of whether Centene is a proper defendant in this action. After completing discovery Centene now moves for summary judgment alleging that Centene is not a proper Defendant in this action on two grounds; 1.) Centene does not operate Fidelis Care and 2.) Centene acquired Fidelis Care after the treatments giving rise to this case and that, pursuant to the Asset Purchase Agreement governing the sale, Centene did not inherit Fidelis Care's previous liabilities. Def Br. at 6, ECF No. 31-2. Plaintiff argues that Centene, does in fact operate Fidelis Care and that the Asset Purchase Agreement excludes liabilities such as those at issue here, meaning that Centene did inherit the liabilities upon purchase. Pl. Opp. Br. at 9-10, ECF No. 32. I address each argument in turn.

### A. There is Insufficient Evidence to Pierce the Corporate Veil and Render Centene a Proper Defendant.

"Under New York law, 'a parent company is not automatically liable for the acts of its wholly-owned subsidiary.'" *Degraziano v. Verizon Communs., Inc.*, 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004) (quoting *Manchester Equipment Co., Inc. v. Amer. Way and Moving Co., Inc.*, 60 F. Supp. 2d 3, 6 (E.D.N.Y.1999)). Mere corporate ownership is insufficient as "liability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a

subsidiary." *Id*. Rather, to hold a parent company liable for the actions of its subsidiary a party must show "complete domination over the corporation with respect to the transaction at issue."[2] *Id* at 246 (quoting. *Amer. Fuel Corp. v. Utah Energy Devel. Co., Inc.*, 122 F.3d 130, 134 (2d Cir.1997)) (internal quotations omitted); *see also Baratta v. Kozlowski*, 464 N.Y.S.2d 803, 805 (2d Dep't 1983).

> Complete domination can be shown through a number of factors including:
>
> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity [or individual], and (10) intermingling of property between the entities. *Degraziano*, 325 F. Supp. 2d at 246.

If a party successfully demonstrates that a parent company exercises complete domination over a subsidiary then the corporate veil may be pierced allowing for parent company liability. *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y.2003).

The parties agree that NYQHC is a wholly owned subsidiary of Centene. Pl. R. 56.1 Statement ¶ 2, ECF No. 32-1. The parties further agree that only NYQHC, and not Centene, is licensed to provide health insurance in the state of New York. *Id* ¶¶ 1, 3. Plaintiff argues that while "NYQHC appears to be the licensed entity through which Centene offers health insurance in New York State, using Fidelis Care as its brand name, . . . NYQHC does not operate, administer, or own Fidelis Care. Centene does." Pl. Opp. Br. at 10, ECF No. 32. Plaintiff relies on public statements made by Centene, the majority of which simply reinforce what is already

---

[2] In addition to demonstrating complete domination, a party must also show that the domination was used to perpetrate some breach of a legal duty. *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997). However, because this Court recommends that there is insufficient control demonstrated here, it need not reach the issue of breach of legal duty.

agreed upon, that NYQHC, offering insurance under the brand name "Fidelis Care" is a wholly owned subsidiary of Centene. *See e.g., Id* (noting statements including "Fidelis Care is a wholly owned subsidiary of Centene Corporation" and "Fidelis Care . . . will become Centene's health plan in New York State"). While these statements show that Centene owns NYQHC/Fidelis Care, that fact alone is insufficient to justify piercing the corporate veil and imposing liability on Centene.

One statement presented by Plaintiff however warrants closer examination by this Court. Fidelis Care documents have—on at least two occasions noted by Plaintiff—defined the term "Health Plan[s]" such as Fidelis Care to include "a health plan 'that is operated or administered, in whole or part, by Centene Management Company LLC.'" *Id* at 9. Even examining this evidence in the light most favorable to Plaintiff, this statement cannot, as a matter of law, establish the kind of complete domination necessary to pierce the corporate veil. While indicative of some level of control by Centene, this general definition provides no insight into the actual nature of the relationship between Centene and Fidelis Care. Indeed, the qualifier "in whole or in part" leaves an expansive range of possibilities regarding the level of control Centene exercises over Fidelis. Even presuming that Centene operates or administers Fidelis Care "in whole" is insufficient to justify piercing the corporate veil.

Previous decisions within this Circuit on this issue are instructive here. The veil piercing doctrine is intended to impose liability in an instance where a subsidiary entity "has no separate mind, will, or existence of its own," in other words, when the subsidiary is, in practice, the parent company itself operating under a different name. *See Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997). This Court has previously declined to pierce the corporate veil in an instance where the relationship between a parent company and subsidiary was so close

13

that the parent listed all the subsidiaries' assets and liabilities as their own on the parent company's balance sheet. *Degraziano*, 325 F. Supp. 2d at 245. While this indicated that, to some degree, the parent company treated the assets of the subsidiary and the parent as the same, such evidence was still insufficient to render the subsidiary without a will of its own. *Id*. In this case, no such evidence of close control has been presented. Even presuming that Centene does operate or administer Fidelis Care, as Plaintiff asserts, that fact alone does not indicate that Centene operates Fidelis Care in such a way as to exercise complete domination over its subsidiary.

Plaintiff further argues that Centene has "fail[ed] to provide undisputed evidence as a matter of law pursuant to Fed. R. Civ. P. 56 that Centene does not operate, administer, and most importantly, own, Fidelis Care." Pl. Opp. Br. at 9, ECF No. 32. This argument, however, misunderstands the nature of the Rule 56 standard. Plaintiff bears the burden of proof at trial of showing Centene exercised complete domination over Fidelis Care. *Christensen v. SBM Industries, Inc.*, 9 F.Appx. 52, 53 (2d Cir. 2001). Centene therefore is under no obligation to provide "undisputed evidence" contradicting Plaintiff's claim. Instead, Centene may simply point to the insufficiency of Plaintiff's evidence. *See Haskin v. United States*, No. 10-CV-5089, 2015 WL 3971730, at *5 n. 5 (E.D.N.Y. June 30, 2015). However, in this case Centene has gone beyond that and presented evidence in the form of a declaration from NYQHC's President. Def. Reply. Br. at 3, ECF No. 35. And, as detailed above, assuming arguendo that Centene does operate, administer, and own Fidelis Care is insufficient as a matter of law to justify piercing the corporate veil. I therefore recommend this Court find that Centene is not a proper defendant in this case and grant Centene's motion for summary judgment.

14

### B. Centene did not Inherit Previous Liabilities Upon Purchasing Fidelis Care.

In the alternative Centene argues that even if piercing the corporate veil is appropriate in this case, Centene remains an improper defendant for DA and DR's claims because liabilities that originated prior to June 30, 2018 remained with Catholic Health Plans after Centene acquired Fidelis Care. Def. Br. at 6, ECF No. 31-2. In response, Plaintiff argues that the terms of the Asset Purchase Agreement exclude claims such as DA and DR's and Centene did in fact inherit the liabilities upon purchase. Pl. Opp. Br. at 10, ECF No. 32.

Thus, determining whether Centene inherited potential liability for DA and DR's claims hinges on the interpretation of the Asset Purchase Agreement. "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir.2000). Determining ambiguity is a question of law properly decided by the Court. *Id*. Language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement" *Id* (quoting *Sayers v. Rochester Tele. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)).

As Plaintiff points out, Section 8.03 of the Asset Purchase Agreement requires Centene to indemnify Catholic Health Plans for "Assumed Liabilities." Def. Ex. B § 8.03(e), ECF No. 31-4. Assumed Liabilities is defined to include certain liabilities except "Excluded Liabilities." *Id* § 2.03. Section 2.04 further defines Excluded Liabilities to include "all Liabilities relating to or resulting from any breaches of the Assigned Contracts prior to the Closing Date, whether arising prior to, on or after the Closing Date." *Id* § 2.04(h). The parties agree that the Closing Date of the transaction is July 1, 2018. Pl. R. 56.1 Statement ¶ 5, ECF No. 32-1. This language

15

unequivocally excludes liabilities, such as DA and DR's claims, which stem from alleged breaches occurring before July 1, 2018.

Plaintiff maintains that the contract language is ambiguous because Section 2.04(f) also excludes "liabilities [a]rising under seller employe[e] plans." Pl. Opp. Br. at 10, ECF No. 32. It is unclear exactly how this separate exclusion creates an ambiguity. If, as Plaintiff seems to suggest, Fidelis Care qualifies as a Seller Employee Plan under the terms of the Asset Purchase Agreement, then Section 2.04(f) would exclude all liabilities regardless of the date of breach. Ultimately, the Court need not reach this question as Section 2.04(h) unambiguously excludes claims such as DA and DR's which occurred before July 1, 2018. I therefore recommend this Court grant Centene's motion for summary judgment on this ground as well.

## CONCLUSION

For the reasons given, I recommend that the Court GRANT Centene's motion for summary judgment in its entirety. Should the Court agree with this recommendation, it need not reach Centene's motion to dismiss. However, should the Court deny summary judgment, I recommend this Court GRANT, in part, and DENY, in part, Centene's motion to dismiss.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir.

2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                  /s/
                Steven L. Tiscione
                United States Magistrate Judge
                Eastern District of New York

Dated: Central Islip, New York
    June 30, 2023